IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **KIT CHECK, INC.,** | : | |
| | : | |
| Plaintiff, | : | Case No. 2:17-CV-1041 |
| | : | |
| v. | : | JUDGE ALGENON L. MARBLEY |
| | : | |
| | : | Magistrate Judge Vascura |
| **HEALTH CARE LOGISTICS, Inc.,** | : | |
| | : | |
| Defendant. | : | |

## OPINION & ORDER

This matter is before the Court on Defendant Health Care Logistic, Inc.'s ("HCL") Motion for Judgment on the Pleadings. (ECF No. 25). HCL argues that Plaintiff Kit Check, Inc.'s ("KCI") patents are invalid as directed to patent ineligible subject matter. Plaintiff responded (ECF No. 29), and HCL replied (ECF No. 32). KCI then filed a Motion to Strike or, in the Alternative, Motion for Leave to File a Sur-Reply. (ECF No. 35). That Motion is also ripe for review. For the following reasons, HCL's Motion for Judgment on the Pleadings and KCI's Motion to Strike or File Sur-Reply are hereby **DENIED**.

### I. BACKGROUND

KCI "designs, manufactures, and sells" a healthcare product ("KCI Product") that automates the process for restocking medications ("pharmacy kits"). (ECF No. 1 at 1). The KCI Product consists of several parts but can be described as a variation on the following general process: (1) pharmacy items are included in a pharmacy kit; (2) an RFID tag is attached to the pharmacy items or the pharmacy kit itself; (3) the pharmacy kit is put into an electromagnetically shielded container; and (4) a device reads the data on the RFID tags to determine if any of the

1

items are expired, expiring, missing, or the like.  (*Id.*).  KCI has seven patents for its products, all titled "Management of Pharmacy Kits": U.S. Patent No. 8,990,099 (the "'099 patent"), issued March 24, 2015; U.S. Patent No. 9,037,479 (the "'479 patent"), issued May 19, 2015; U.S. Patent Number 9,058,412 (the "'412 patent"), issued June 16, 2015; U.S. Patent No. 9,058,413 (the "'413 patent"), issued June 16, 2015; U.S. Patent No. 9,367,665 (the "'665 patent"), issued June 14, 2016; U.S. Patent No. 9,734,294 (the "'294 patent"), issued August 15, 2017; and U.S. Patent No. 9,805,169 (the "'169 patent"), issued October 31, 2017.  (ECF No. 1 at 12).

HCL's alleged infringement of the patents arises out of a business relationship between HCL and KCI.  The parties dispute how to characterize their relationship.  As KCI describes it, "KCI engaged HCL as its supplier to construct the scanning station portion of the KCI Product." (Id. at 2).  As HCL describes their relationship, however, HCL was not just a supplier; rather, "HCL provided design services to KCI for an RFID reader box . . . ."  (ECF No. 18 at 3).  KCI alleges that it had a nondisclosure agreement (NDA) with HCL that HCL and KCI executed on December 19, 2013.[1]  (ECF No. 1, Ex. B).  The NDA provided that HCL would not use any of KCI's confidential information.  In 2014, KCI began sharing its trade secrets and other confidential information with HCL for the purpose of facilitating the design and construction of the Reader Box.  (ECF No. 1 at 6).

KCI spent over one year designing and testing its product, refining prototypes, and determining how to manufacture the product.  During this process, KCI went through at least twelve different versions of its product.  (ECF No. 1 at 8–10).  HCL disputes that KCI "was the only party performing testing and making suggestions for improvements that were incorporated

---

[1] As HCL notes, KCI does not appear to have signed the NDA, at least not the version it submitted to the Court. (ECF No. 18 at 19).

into the design, or that any or all improvements were proprietary to Kit Check." (ECF No. 18 at 5, ¶35). HCL and KCI entered into a separate agreement ("the Agreement") on August 31, 2015. That agreement specified that KCI owned all of the intellectual property used in the process of designing and making the KCI Product.

HCL also sells a system for managing medication refills. HCL's product line is called Stat Stock. HCL's system uses RFID technology and a "Stat Stock box." HCL asserts that KCI "gave HCL permission to design, manufacture, offer to sell, and sell RFID boxes that would target a different market from the large hospital market that Plaintiff was pursuing." (ECF No. 18 at 24).

On December 14, 2016, KCI sent a letter to HCL "notif[ying] HCL of the Asserted Patents." (ECF No. 1 at 12). In this correspondence, KCI expressed "concern that HCL was using and sharing KCI's trade secrets and that HCL should cease and desist from its unlawful competitive activity." (Id. at 16). On November 20, 2017, KCI notified HCL that KCI believed HCL was infringing its patents. (ECF No. 1 at 12).

On December 1, 2017, KCI sued HCL for misappropriation of trade secrets under federal and state law, breach of their 2013 Nondisclosure agreement, breach of the 2015 Design Services/Prototyping and Supplier Agreement, and infringement of KCI's seven patents. (ECF No. 1). HCL denied these allegations and pled as affirmative defenses that it did not infringe any of the patents, that all of KCI's Asserted Patents are invalid, that prosecution history estoppel bars KCI from asserting any of its patents, and that the patents are unenforceable or invalid because KCI behaved inequitably or had "unclean hands." (ECF No. 18). HCL has counterclaimed for declaratory relief that it did not infringe any of the patents or that the patents are invalid.

3

HCL moved for Judgement on the Pleadings on May 25, 2018. (ECF No. 25). HCL argues that KCI's Asserted Patents are directed to patent-ineligible subject matter and that the patents do not contain a sufficiently inventive concept to warrant patent protection. This Motion is fully briefed and ripe for review.

## I. STANDARD OF REVIEW

A motion for judgment on the pleadings is proper "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings under Rule 12(c) is reviewed under the same standard as a motion to dismiss under Rule 12(b)(6). *Clellan v. Karnes*, No. 2:10-CV-170, 2011 WL 249493, at *1 (S.D. Ohio Jan. 25, 2011) (Marbley, J). When evaluating a motion for judgment on the pleadings, this Court takes "all well-pleaded material allegations of the pleadings of the opposing party . . . as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)). The Court will grant the motion for judgment on the pleadings "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Id.* at 582 (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)). In addition to the complaint itself, the Court may consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997).

HCL has moved for judgment on the pleadings, arguing that KCI's patents are invalid under 35 U.S.C. § 101 as directed to patent-ineligible subject matter. The question of "whether a claim recites patent eligible subject matter is a question of law which may contain underlying

4

facts." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). When "there are claim construction disputes at the Rule 12(b)(6) stage, . . . either the court must proceed by adopting the non-moving party's constructions, . . . or the court must resolve the disputes to whatever extent is needed to conduct the § 101 analysis, which may well be less than a full, formal claim construction." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018) (internal citations omitted). A claim that a patent's claims are directed to patent-ineligible subject matter requires this Court to consider "whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field . . . ." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). This "is a question of fact. Any fact, such as this one, that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence." *Id.*

## II. ANALYSIS

Before turning to the parties' substantive arguments, this Court must address KCI's Motion to Strike or for Leave to File Sur-Reply. (ECF No. 35). KCI takes issue with HCL's Reply in which HCL brings up, for the first time, evidence from a provisional patent application, the '231 Application, and other evidence supporting HCL's contention that KCI's patents were directed to patent-ineligible subject matter. KCI asks that "Section I.C.ii of HCL's Reply as well as any other references to the '231 Application or to evidence purporting to support the assertion that the claimed invention was 'well-understood,' 'routine,' and 'conventional,'" be struck. (ECF No. 35 at 4).

KCI is correct "that a moving party may not raise new issues for the first time in its reply brief," *Bishop v. Oakstone Academy*, 477 F.Supp.2d 876, 889 (S.D. Ohio 2007), and "[e]vidence used to support a reply memorandum shall be limited to that needed to rebut the positions argued

in memoranda in opposition." S.D. Ohio Civ. R. 7.2(d). Whether HCL can submit such evidence here is a close case. HCL could have submitted such evidence in its initial brief, but HCL's Reply can also be fairly read as responding to the arguments KCI advanced for why its invention was patent-eligible. Therefore, KCI's Motion to Strike is **DENIED.** KCI has alternatively moved for Leave to File a Sur-Reply. Because HCL's Reply can be fairly read to be replying to KCI's arguments, and because KCI's proposed sur-reply does not substantially advance the issues before this Court, KCI's Motion for Leave to File a Sur-Reply is also **DENIED.**

Before analyzing whether the claims at issue here are invalid under § 101, this Court must determine the appropriate claims for review. A court may designate representative claims "in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative." *Berkheimer*, 881 F.3d at 1365. A claim is not representative simply because it is an independent claim. *Id.* Where parties dispute whether a claim is representative, a district court may evaluate the claims on its own to determine whether the alleged representative claims are substantially similar and linked to the same abstract idea. *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (internal citations omitted). But a district court is not required individually to address claims not asserted or identified by the non-moving party if the court determines that certain claims are representative because they are substantially similar and linked to the same abstract idea. *Zimmers v. Eaton Corp.*, No. 2:15-CV-2398, 2016 WL 4094870, at *5 (S.D. Ohio Aug. 2, 2016) (Marbley, J).

KCI has asserted seventy-nine claims as follows: claim 14 of the '099 patent; claims 1–6 of the '479 patent; claims 1–6, 8, 9, 17–20, 22, and 23 of the '412 patent; claims 1–7, 15–20, 24, and 26 of the '413 patent; claims 1–3, 5, 7, 8, 24–28, and 30 of the '665 patent; claims 12–16, 19, and 21 of the '294 patent; and claims 22, 25, 26, 27, 29, 30, 49, 51–60, 64, 65, 66, 79, 80, 82, 83, and 85 of the '169 patent. (ECF No. 32, Exh. B at 2). HCL argues that Claim 17 of the '412 patent, claim 24 of the '665 patent, and claim 12 of the '294 patent are representative. KCI argues that these claims are not representative because HCL has omitted important limitations. (ECF No. 29 at 10–11).

Because this Court must construe all facts in favor of the nonmoving party, KCI, this Court will not reduce all of the seventy-nine claims to those three representative claims suggested by HCL. Rather, this Court will designate representative claims, taking into consideration the limitations that KCI alleges will render their claims patent eligible, as follows:

- For the RFID tag structure, Claims 19 and 21 of the '294 Patent are representative. These claims will not be representative of claims 1–6 of the '479 patent; claims 13–16 of the '294 patent, or claim '53 of the '169 patent because those additional claims recite merely that an RFID tag with a transparent portion is incorporated into the kit management system. Claims 19 and 21 of the '294 Patent are directed to the structure of the RFID tag itself.
- The remainder of the claims describe the larger inventory management system. The system claims shall be represented as follows:
    - Claim 12 of the '294 Patent, which includes the limitation that the RFID tag includes a transparent portion
    - Claim 17 of the '412 Patent
    - Claims 24 and 25 of the '665 Patent, which include the limitation that the RFID tag is associated with the pharmacy kit itself. (ECF No. 29 at 11).
    - Claim 1 of the '412 patent, which includes the limitation that the pharmacy kit template includes segments.

Patent protection is available for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. Patent protection is not available for "[l]aws of nature, natural phenomena, and abstract ideas."

7

*Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980). Patent law excludes such concepts from patent eligibly on the basis of preemption. If such ideas were patentable, it could prevent others from using the "building blocks of human ingenuity." *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). Such preemption could "impede innovation more than it would tend to promote it, thereby thwarting the primary object of the patent law." *Id.* But "too broad an interpretation of this exclusionary principle could eviscerate patent law. For all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012).

To determine whether a patent is directed to patent ineligible ideas, courts apply a two-step analysis. First, courts determine "whether the claims at issue are directed to one of those patent-ineligible concepts." *Alice Corp.*, 573 U.S. 208 (2014). If the claims are directed to a patent-ineligible concept, then courts "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application"; in other words, whether the claims include some "inventive concept . . . sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.*

### A. Alice Step One

The first step in determining whether patent claims are invalid under 35 U.S.C. § 101 is to determine whether the patent claims are directed to an abstract idea. This "'directed to' inquiry applies a stage-one filter to claims, considered in light of the specification, based on whether 'their character as a whole is directed to excluded subject matter.'" *Enfish LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed Cir. 2016) (quoting *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015)). While the Supreme Court has not

precisely defined "abstract idea," it has stated that "a method of organizing human activity" and "a fundamental economic practice long prevalent in our system of commerce" fall within the prohibited abstract idea category. *Alice Corp.*, 573 U.S. at 219–20. Claims are also abstract if they "simply [add] conventional computer components to well-known business practices." *Enfish LLC*, 822 F.3d 1327 (Fed. Cir. 2016). Thus, the Supreme Court and Federal Circuit have found abstract patents directed to: "intermediated settlement," *Alice Corp.*, 573 U.S. at 220; "(1) collecting data, (2) recognizing certain data within the collected data set, and (3) storing that recognized data in a memory," *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir.); "filtering files/e-mail," *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1313 (Fed. Cir. 2016); and "managing a game of Bingo," *Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005, 1008 (Fed. Cir. 2014).

Claims are not abstract if they "improve the functioning of the computer itself" or "improve[] an existing technological process." *Alice Corp.*, 573 U.S. at 223, 225. The Federal Circuit has thus upheld claims as not abstract when "the claims [sought] to protect only the application of physics to the unconventional configuration of sensors as disclosed." *Thales Visionix Inc. v. United States*, 850 F.3d 1343 (Fed Cir. 2017). But the Federal Circuit found the claims in *Automated Tracking Sols., LLC v. The Coca-Cola Co.* ("ATS") abstract because they "[did] not require a particular configuration or arrangement of RFID system components." *ATS*, 723 F. App'x 989, 994 (Fed. Cir. 2018).

HCL argues that KCI's patents are directed "to the known abstract idea of inventory management, namely monitoring the contents of a pharmacy kit and identifying characteristics about its contents." (ECF No. 25 at 20). KCI argues that HCL overlooks three significant limitations in the claims that make the patents directed to patent eligible subject matter: (1) the

9

structure of the RFID tags, (2) the limitation that the pharmacy template comprise a plurality of segments, and (3) the addition of the RFID tag to the pharmacy kit and items. (ECF No. 29 at 11). KCI thus argues that "the claims are directed . . . to a novel and non-obvious RFID tag structure and to a unique arrangement of RFID technology in the pharmacy kit context." (ECF No. 29 at 12).

### 1. *Claims 19 and 21 of the '294 Patent*

Claims 19 and 21 of the '294 Patent are directed to the structure of an RFID tag. Claims 19 and 21 of the '294 Patent state as follows:

**19**. A radio frequency identification (RFID) tag, comprising:

a body including a first substrate that is opaque and an RFID device configured to store tag information, the RFID device formed of a second substrate that is different from the first substrate; and

a tail portion extending away from a single side of the body and formed of a transparent material that is different from the first substrate and the second substrate, the tail portion comprising a proximal end physically coupled to the single side of the body, a distal end that is a free end, and an adhesive backing for affixing the RFID tag to a first pharmacy item container configured to store a first pharmacy item, wherein the transparent material prevents occlusion of label information of the first pharmacy item container, and wherein the tag information is associated with pharmacy item data associated with the pharmacy item.

**21.** The RFID tag of claim **19**, wherein the first substrate include at least one of computer-readable information or human-readable information.

('294 Patent col. 21 l. 1–23). KCI argues that because this claim is directed to the "physical structure of an RFID tag," the claim cannot be said to be directed to an abstract idea. (ECF No. 29 at 12).

Claims 19 and 21 of the '294 are not directed to an abstract idea. Claims 19 and 21 describe a design for an RFID tag. This design specifies a particular method for putting together an RFID tag. Thus, these claims are not abstract.

10

*2. System Claims: Claim 12 of the '294 Patent, Claims 1 and 17 of the '412 Patent, and Claims 24 and 25 of the '665 Patent*

Next are the system claims. This Court has taken two of HCL's representative claims: claim 12 of the '294 patent and claim 17 of the '412 patent and added claims 24 and 25 of the '665 patent and claim 1 of the '412 patent to account for the limitations that KCI alleges make the claims not abstract.

Claim 17 of the '412 patent is the most general representative claim. It reads as follows:

**17.** A system for managing a pharmacy kit, comprising: a pharmacy kit container that provides electromagnetic shielding; and

an information processing system communicatively coupled to a radio frequency identification (RFID) reader, the information processing system comprising a computer-readable medium storing computer-executable instructions that when executed by one or more processors cause the one or more processors to:

receive tag information of a plurality of RFID tags coupled to a plurality of pharmacy item containers based at least in part on an antenna emitting a radio signal at least within the pharmacy kit container,

wherein the plurality of pharmacy item containers are configured to store a plurality of pharmacy items,

wherein a particular RFID tag of the plurality of RFID tags is coupled to a particular pharmacy item container of the plurality of pharmacy item containers and the particular pharmacy item container is configured to store a particular pharmacy item of the plurality of pharmacy items, and

wherein the particular RFID tag is associated with particular pharmacy item data comprising at least an identifier of the particular pharmacy item and an expiration of the particular pharmacy item;

verify a pharmacy kit based at least in part on a pharmacy kit template, wherein the pharmacy kit template indicates a group of pharmacy items that form at least a portion of the pharmacy kit, wherein to verify the pharmacy kit, the computer-executable instructions cause the one or more processors to:

determine whether the plurality of pharmacy items correspond to the group of pharmacy items that form the at least a portion of the pharmacy kit using the tag information and the pharmacy kit template, and

determine whether the plurality of pharmacy items satisfy an expiration threshold; and

cause a display to display results of the verification of the pharmacy kit including information regarding any of the plurality of pharmacy items that do not satisfy the expiration threshold.

('412 Patent col. 19 l. 45–67, col. 20 l. 1–20).

Claim 17 of the '412 patent is directed to the abstract idea of inventory management. Essentially, claim 17 can be summarized as "[a] system for managing a pharmacy kit" that includes several components including: (1) a structure that provides "electromagnetic shielding," (2) an "information processing system" that includes a set of "computer-executable instructions," and (3) RFID tags attached to pharmacy items contained in a pharmacy item container. These components allow an RFID reader to read the information on the RFID tags, identify what "pharmacy kit" the items are a part of, and determine whether any of the items are expired or expiring. ('412 Patent at 19–20). This claim recites a process already used in hospitals, as noted in the specification; that is, organizing pharmacy items into "pharmacy kits" and managing the contents of those kits.

The Federal Circuit's holding in *ATS* is instructive. The claims in ATS were "directed to systems 'for locating, identifying and/or tracking of' an object using RFID components." *ATS*, 723 F. App'x at 993. The Federal Circuit held that those claims were abstract because "[t]he representative claims simply do not require a particular configuration or arrangement of RFID system components. Nor do the representative claims require multiple antenna coverage areas." *Id.* at 994. The Federal Circuit implied, however, that "claims directed to specialized components of an RFID system or a specialized arrangement of components in an RFID system should be patent-eligible." *Id.*

12

In holding that the claims in *ATS* were abstract, the Federal Circuit contrasted the claims with the claims in *Thales Visionix v. United States*. KCI also analogizes its claims to *Thales*. But KCI's claims are not like the claims in *Thales*. The claims in *Thales* required a "particular arrangement of sensors." *Thales*, 850 F.3d at 1348. That arrangement, in turn, solved a problem in the existing technology. *Id.* KCI argues that its claims "are directed to a specialized arrangement in a specific context: a pharmacy kit management system using specific components and specific functionalities." (ECF No. 29 at 17). But "merely limiting the field of use of the abstract idea to a particular . . . environment does not render the claims any less abstract." Affinity Labs of Tex., LLC v. DIRECTV, LLC, 838 F.3d 1253, 1259 (Fed. Cir. 2016). Additionally, although KCI's claims require the use of RFID tags, KCI's claimed system appears to work much the same way whether the RFID tag is attached to the pharmacy item container or the pharmacy kit. Therefore, KCI's systems do not require any particular placement of the RFID tags, and that placement does not fix some existing problem in managing pharmacy kits.

KCI also points to the Federal Circuit's holding in *McRO Inc. v. Bandai Namco Games America, Inc.*, but the claims in *McRO* differed in important ways from KCI's asserted claims. The claims in *McRO* described a method for automating animation, using rules that were limited in a particular way. *McRO Inc. v. Bandai Namco Games America, Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016). As the *McRO* Court characterized the analysis, the question is "whether the claims in these patents focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *Id.* at 1314. The McRO claims improved the previous process because, before the claimed invention, "an animator's process was driven by subjective determinations rather than specific, limited mathematical rules." *Id.*

13

Unlike the claims in *McRO*, claim 17 of the '412 patent does not specify a different method for how to determine whether pharmacy items are expired. Rather, claim 17 "merely implement[s] an old practice in a new environment." *FairWarning IP, LLC v. Iatric Systems, Inc.*, 839 F.3d 1089, 1094 (Fed. Cir. 2016). KCI does not explain how its claims "apply rules of selection in a manner different from those which humans used, albeit with less efficiency, before the invention was claimed." *Intellectual Ventures I LLC v. Erie Indemnity Company*, 711 F. App'x 1012, 1016 (Fed. Cir. 2017).

Claims 24 and 25 of the '665 patent include the additional limitation that the RFID tag be associated with the pharmacy kit itself, rather than the individual pharmacy items. These claims merely change the location of the RFID tag. KCI does not explain how such a change in location renders these claims not abstract. KCI does not show how attaching the RFID tag to the pharmacy kit itself fixes a problem with the prior system of pharmacy tracking, or otherwise corrects for an issue with attaching the RFID tag to the pharmacy item instead. The system functions in essentially the same way regardless of where the RFID tag is attached.

Claim 1 of the '412 patent includes the additional limitation that the pharmacy kit template includes segments. The term "segment" is a contested term that is the subject of claim construction briefing. At the motion for judgment on the pleadings, however, this Court adopts KCI's proposed construction because claim construction has yet to occur. KCI defines "segment" as "class or type of item(s) or additional segments." (ECF No. 47 at 11). KCI's Response to the motion for judgment on the pleadings further describes segments as "correspond[ing] to a class or type of items. For example, an item segment may define a specific class of medications, like ibuprofen." (ECF No. 29 at 5). KCI alleges that these segments "allow[] the hospital pharmacy to accurately and efficiently determine the status of the items in

14

the kit." (*Id.*). HCL asserts that segments are merely part of the software used in the system. Although a limitation need not be a physical item to render a claim not abstract, the addition of segments in the pharmacy kit remains an abstract idea. The segments in KCI's claimed system appears to merely stand for the concept that kits can be divided into types of items. Claims that include segments are still fundamentally concerned with inventory management.

Lastly, claim 12 of the '294 patent includes the limitation of using the RFID tag specified in claims 19 and 21 in the inventory management system. Like claims 19 and 21 of the '294 patent, claim 12 of the '294 patent is not abstract. The addition of the specific RFID tag does require a specific arrangement of items, more like the claims in *Thales*.

### B. Alice Step Two

At step two, this Court "consider[s] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice Corp.*, 573 U.S. at 208. This requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Id.* at 221 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 72 (2012)). Nor is it enough to "claim[] the improved speed or efficiency inherent with applying the abstract idea on a computer," *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015), to require "generic computer" functions or components, *Alice*, 573 U.S. at 223–26, or to limit the idea "to a particular technological environment," *Bilski v. Kappos*, 561 U.S. 593, 610–11 (2010). Put another way, "mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea. Rather, the components must involve more than performance of 'well-understood, routine, conventional activities

15

previously known to the industry.'" *In re TLI Communications LLC Patent Litigation*, 823 F.3d 607, 613 (Fed. Cir. 2016) (quoting Alice, 573 U.S. at 225).

This Court found claims 12, 19, and 21 of the '294 patent not abstract. Therefore, this Court need only examine claim 1 of the '412 patent, claim 17 of the '412 patent, and claims 24 and 25 of the '665 patent. KCI argues that these claims contain inventive concepts that render the claims patent eligible. KCI points to the following limitations: the pharmacy kit provides electromagnetic shielding (all claims), the pharmacy kit templates are segmented ('412 patent, claim 1), the system can identify missing pharmacy items and available substitutes ('412 patent, claim 1), an RFID tag is attached to a pharmacy item ('412 patent, claim 1), and an RFID tag is attached to the pharmacy kit ('665 patent, claims 24 and 25). (ECF No. 29 at 19). It is appropriate to look to the specification to determine whether KCI's claimed limitations in fact identify anything more than well-known and conventional activities. *In re TLI Communications LLC Patent Litigation*, 823 F.3d 607, 613–14 (Fed. Cir. 2016).

HCL has not met its burden of showing by clear and convincing evidence that the limitations do not provide an inventive concept. The Federal Circuit has instructed that in analyzing the claims at step two, courts are not just to examine whether "each claim element, by itself, was known in the art." *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). Rather, "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Id.* It remains to be seen whether it was well-known and conventional to combine these limitations in the way KCI's patents claimed. HCL argues that the lack of description of the electromagnetic shielding component of the system is an admission that it is well-known, routine, and conventional activity. (ECF No. 32 at 15). The specification states that "[t]he use of an enclosed space to

allows RFID tags to be read without interference from objects in the surrounding environment, such as false positives from RFID tags on items not belonging to [a] kit. Accordingly, container **315** may be formed of a material designed to provide electromagnetic shielding, such as a metal box." ('412 patent, col. 10 l. 8–13). While the description of electromagnetic shielding in the specification and claims comes close to the line of merely saying to apply an abstract idea, the specification could also be read to identify a specific problem in using RFID tags, as KCI contends. (ECF No. 29 at 5–6). Aside from pointing to this description of electromagnetic shielding, HCL has offered no reason to think that the use of electromagnetic shielding in the system for managing pharmacy kits is routine and conventional. HCL points out that the electromagnetic shielding limitation was not included in the provisional patent application, but this Court is reviewing the patents as issued, not the provisional applications.

### III. CONCLUSION

For the foregoing reasons, HCL's Motion for Judgment on the Pleadings and KCI's Motion to Strike or, in the Alternative, Motion for Leave to File a Sur-Reply are **DENIED.**

**IT IS SO ORDERED.**

                                                         **s/Algenon L. Marbley**
                                               **UNITED STATES DISTRICT JUDGE**

**DATE: March 14, 2019**